## MURDOCK *vs.* MITCHELL.

1. A Court of Equity will enjoin an administrator from recovering a tract of land when the intestate has been dead more than seven years, and the heir at law was of age at the death of intestate, and when there are no debts against the estate, and the defendant has been in adverse possession for seven years before commencement of suit or grant of administration.

Equity, in Cobb Superior Court. Tried before Judge CABANISS, at September Term, 1859.

This was a bill filed by Jane L. Mitchell, in Cobb Superior Court alleging that she was regularly appointed administrator of Samuel Mitchell, deceased, who was her late husband; that about the 13th of September, 1837, William G. Robinson purchased from Thomas Patterson, lot of land number one hundred and twenty-one, in the 20th district of the 2d section of Cobb county, and went into the possession and occupancy of the same, claiming it adversely; that Robinson afterwards conveyed the land to Michael O'Brien; that the land was afterwards sold at sheriff's sale as the property of O'Brien, and Samuel Michell, complainant's intestate, became the purchaser; that Phillip Clayton and Elizabeth Clayton went upon the land, and occupied as tenants of Mitchell; that the land was held by complainant, and those under whom she claimed, by regular bargain and sale, and deeds of conveyance from the year 1837 until in August, 1849, continuously and adversely; that Thomas J. Murdock, as the administrator of one Elizabeth Brown, deceased, commenced an action of ejectment against Elizabeth and Phillip Clayton, for the recovery of said land and mesne profits; that Murdock's letters of administration were obtained in July, 1849; that his intestate, Elizabeth Brown, died in the fall of 1835, leaving no debts to pay, and leaving but one child and heir at law; that said administration of said Elizabeth Brown's estate, was unnecessary, either to pay debts against her estate, or to make distribution thereof; that there was nothing, and had been nothing to hinder or prevent the heir at law of Elizabeth Brown from asserting her right to said land, and that as she had failed so to do, the complainant had a perfect title to the land by the statute of limita-

Murdock *vs.* Mitchell.

tions and adverse possession.    The bill prayed for discovery and a perpetual injunction of the action of ejectment.

The answer of the defendant admits substantially the facts and allegations set forth in the bill.

It was admitted and agreed by counsel on both sides, in the Court below, that the following facts were true, to-wit :

Elizabeth Brown, the drawer and grantee of the land in controversy, and intestate of the defendant, died in the fall of 1835, leaving one daughter, Mary, who was the wife of Lewis Lodge; that Lewis Lodge died in the life time of Elizabeth Brown, leaving his wife Mary and two children, one of whom died long since, and the other is still living ; that Mary again married a man by the name of Cross, by whom she had five children ; that Mary's marriage with Cross occurred in Elizabeth Brown's lifetime ; that Mary died after the death of Elizabeth Brown, leaving her husband Cross, and five children, all of whom, except one, were minors at the commencement of the action of ejectment for the land in dispute; that neither of the husbands, or the heirs of Mary, ever reduced the land to possession, or took administration on her estate, or upon that of Elizabeth Brown; that Murdock obtained administration on Elizabeth Brown's estate on the 2d of July, 1849, and commenced the action of ejectment the 23d of July, 1849; that the deed in complainants chain of title is not the deed of the grantee, but is either a forgery or made by some other Elizabeth Brown.    It was also agreed that as the result of the trial depended entirely upon a legal question, that that question should be argued before the Court, and as the Court might decide, so the verdict of the jury should be rendered.

The Court, upon hearing argument, decided that, " upon the death of Elizabeth Brown without any debts to be paid, and leaving but one heir at law, namely : Mary Cross, her daughter, the title to her land passed to her heir at law, and vested in her, and she could maintain an action of ejectment for the recovery of the land in dispute.    The real estate of Elizabeth Brown could vest in her administrator only for two purposes: to pay her debts, and to make distribution among her heirs at law ; but there being no debts to be paid, and but one heir at law, there was no necessity for the administrator to recover and sell the land for either purpose, and consequently, the administrator of Elizabeth Brown could not le-

gally dispose of the land so as to divest the title of the heir at law; but upon the death of Elizabeth Brown, with no debts to be paid, and leaving but one heir at law, the title to her land, vested in her heir at law, Mary Cross, and the husband of Mary Cross, by virtue of his marital rights, was entitled to all the choses in action of his wife upon reducing them into possession; and as his wife, Mary Cross, died before he reduced the land in controversy into possession, he was entitled to administration on her estate without being liable to distribution, and as such administrator was entitled to recover the land, unless superior outstanding title should be shown, and when so recovered, it would be his property, and not subject to distribution. It not appearing that the recovery of the land, by the administrator of Elizabeth Brown, was intended to enure to the benefit of the husband of Mary Cross, and his administration of the land being unnecessary to pay the debts of Elizabeth Brown, or to make distribution among her heirs at law, his suit for the land was such a one as, according to the decisions of the Supreme Court, ought to be perpetually enjoined.

The jury rendered a verdict and decree, in accordance with the decision of the presiding Judge, which decision was excepted to by defendant, and alleged here to be erroneous.

IRWIN and LESTER, for plaintiff in error.

A. J. HANSELL, contra.

By the Court—LYON, J., delivering the opinion.

Upon the death of Elizabeth Brown, the drawer and grantee of the lot in controversy, the titile was cast upon Mary Cross, the only child of the intestate, and her husband, James Cross, as the only heir at law of said intestate, subject only to the payment of debts of intestate; and as there were no debts, the whole title vested absolutely in them without the necessity of administration. Adverse possession to this title commenced in 1827, during the life of Mary. She and her husband could have maintained ejectment for its recovery against the tenant. Carruthers vs. Baily, 3 Kelly, 108; see also Wellborn vs. Weaver, 17 Ga., 270 Upon the death of Mary, the daughter and wife, subsequently in 1840, whatever

title, equity, or interest, she might have had in the land during the coverture, by reason of her husband not having reduced the same into his *actual* possession—see *Chappell vs. Causay,* 11 *Ga.,* 28—vested absolutely in her husband, James Cross. *Bryan vs. Rooks,* 25 *Ga.,* 624. Here, then, was the legal title to this land from 1840 to 1849, in James Cross, with an adverse possession under a claim of right, supported by a paper title, running all the time not only against his title, but all the world. What prevented him from bringing his action of ejectment for the recovery of the possession during all this time? If it be replied, that he could only sue as administrator on the estate of his wife, we answer, *that* is not so certain. What is the necessity of an administration under the cricumstances? No distribution is to be made, no account to be taken or rendered; then, why administer? He is the heir at law. Again, nearly twenty years have elapsed since the death of his wife—what evidence have we, that no administration has been had on her estate? But allow that an administration was necessary, and that none has been had, we ask why Cross, the heir at law, did not administer and assert his right before the statutory bar attached? What obstacle was there to an administration? None whatever; and his failure to administer, even if that was necessary, in time, is as fatal to his right to recover as the failure to bring his action within the statutory period. Shall he be permitted to slumber over his rights, until the claims of third persons have ripened into a paramount title?—until the rights of innocent and *bona fide* purchasers have attached, and then do, indirectly, through this otherwise unnecessary administration, what he could not do himself directly? We apprehend not. This question has been frequently before this Court, and as often decided by it, that a Court of Equity under the circumstances, would, by injunction, protect the occupant from such action. In *Jonekin vs. Holland,* 7 *Ga.,* 591, one Studstill, who was the owner of the lot in dispute at his death, died intestate in 1820, leaving all of his children and heirs at law, of age. Subsequently, Jonekin held the lot adversely more than seven years. Holland took out letters of administration on the estate of Studstill in 1846, and brought ejectment against Jonekin for the recovery of the lot. Jonekin filed his bill setting up these facts, and prayed a perpetual injunction. Judge Lumpkin, who pronounced the opinion,

says: "I am happy to find that my brethren are quite clear, that equity will interpose to protect the occupant under the facts set forth in this bill. It would be a palpable fraud on the law, *to permit the heirs to do that indirectly*, under color of an administration, which they have lost their right to do directly." In *Woolfolk vs. Beatty*, 18 *Ga.*, 523, which was a bill filed for the same purpose, the Court say, " In 1852, forty-two years after the adverse possession began, James Beatty administers upon the estate of Andrew McNeely, with no debts to pay, and commences his suit at law to recover the property for the purpose of distribution. And this injunction is prayed for to restrain the action. We are fully satisfied, under the facts and circumstances of this case, that the injunction should have been granted." In support of that decision, this Court refers to *Wagner vs. Baird*, 1 *Howard* 234, in which the Supreme Court of the United States lays down the principle thus broadly : " Long acquiescence and *laches*, by parties out of possession, are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment. The party guilty of such *laches*, cannot screen his title from the just imputation of staleness, merely by the allegation of an imaginary impediment or technical disability." "What," says this Court in applying the principle to the facts in *Woolfolk vs. Beatty*, " is the pretence, upon which the great hardship and gross injustice in recovering this property from these *bona fide* purchasers, sought to be justified? That no administration has been taken out upon the estate of old Andrew McNeely. Why, did not the heirs force one forty years previously? Is not this, in the language of the authority, an imaginary impediment, a mere technical disability? There was no greater obstacle then than now. If a disability existed, it was voluntary and self-imposed." So we say, again, in this case. The decree of perpetual injunction must be affirmed.